UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-CV-80791-RAR

**LARRY THOMAS, JR.**,

　　　Petitioner,

v.

**STATE OF FLORIDA**,

　　　Respondent.
_____/

## ORDER DISMISSING PETITION

**THIS CAUSE** is before the Court upon a *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, in which Petitioner, Larry Thomas, Jr., attacks the constitutionality of a sentence imposed by the Fifteenth Judicial Circuit Court in and for Palm Beach County, Florida, Case No. 2010-CF-014095. *See generally* Petition, [ECF No. 1]. The Court, observing that the Petition was likely untimely under 28 U.S.C. § 2244(d), directed Respondent to show cause limited to this issue. *See* Order to Show Cause, [ECF No. 5], at 1. Respondent has filed a Response, in which it contends that the Petition is "8 years too late." Response, [ECF No. 10] at 6. The Court thereafter ordered supplemental briefing on whether Petitioner satisfied the actual-innocence exception to overcome untimeliness. *See* Paperless Order, [ECF No. 15]; Supplemental Response, [ECF No. 16].

After considering the parties' briefings, the Court agrees with Respondent that the instant Petition is time-barred under 28 U.S.C. § 2244(d) and must be **DISMISSED**.

## BACKGROUND

### I.       Petitioner's Criminal Case

On December 16, 2010, Petitioner was indicted in the Fifteenth Judicial Circuit Court in and for Palm Beach County, Florida, with first-degree murder with a deadly weapon, sexual battery, and burglary with an assault or battery while armed.  *See* App. 1, Ex. 2, Indictment, [ECF No. 11-1], at 6–7.  Petitioner's charges arose out of the November 8, 2002, sexual assault and murder of a woman named Henriette Celestin (the "Victim").  *See* App. 1, Ex. 1, Probable Cause Affidavit, [ECF No. 11-1], at 2–3; *see generally* Supp'l Resp.  Between July 2002 and November 2002, the Victim and Petitioner (by his own admission) had engaged in sexual relations and had multiple encounters.  *See* Trial Transcript 3 ("T.3"), [ECF No. 17-3], at 1458–87.[1]  Petitioner testified to having had sex with the Victim the night before the murder.  *See id.* at 1480–87.

The Victim was discovered on a bed at a family member's home (the "Residence") with a rock near her head, and an autopsy conducted on November 10, 2002, revealed that the cause of the Victim's death was blunt-force injuries to her head and brain.  *See* Trial Transcript 1 ("T.1"), [ECF No. 17-1], at 557–58; Trial Transcript 2 ("T.2"), [ECF No. 17-2], at 1108, 1136–37.  A detective separately discovered the Victim's belongings—among which included her purse, makeup, papers, and a Bible—in a field across from the Residence.  *See* T.2 at 696–97.

Notably, the Victim was also found with a stain on her right buttock—later determined to be semen—and investigators subsequently tested the DNA from 238 individuals against this evidence.  *See* T.2 at 1208, 1213, 1216.  All 238 samples were excluded as non-matches before Petitioner's DNA was tested in 2010—eight years after the Victim's death.  *See id.* at 1216.

---

[1] The Court uses the pagination reflected on the upper-right corner of the trial transcript copies on file.

After Petitioner's sample was tested against swabs taken from the Victim, it was concluded that Petitioner was the source of the DNA recovered from the semen found on the Victim's right buttock. *See id.* at 1254–56. His swab matched the DNA sample at all 16 genetic markers—which a forensic scientist testified had a statistical rarity of less than 1 in 300 billion. *See id.* at 1256–57. Testing excluded the presence of any additional contributors. *See id.* at 1256. When Petitioner was soon questioned by investigators, he did not initially indicate that he had known the Victim personally. *See* T.3 at 1525–29, 1579–80, 1585–86. He further denied that he had—or would have had—sexual intercourse with the Victim. *See id.* at 1614–18.

Petitioner's trial commenced on January 13, 2014. *See* T.1 at 1. The trial revealed some instances in which investigators chose not to pursue certain leads. For instance, a detective questioned a local sexual-assault arrestee who provided an inconsistent alibi; however, because DNA swabbing excluded him, investigators did not pursue the arrestee further. *See* T.2 at 830, 835, 859–61. Another individual—seen at the edge of the field on the night of the murder and identified in a lineup by a neighbor—was not further investigated after being excluded as the source of the semen. *See id.* at 861–62. For the same reason, investigators decided not to pursue a third suspect who bragged about bashing somebody in the head with a block. *See id.* at 862–83.

Moreover, another detective testified that she did not call any of the numbers that had dialed into the Residence on November 8, 2002, and November 9, 2002. *See id.* at 998–1000. Nor did she place calls to any numbers dialed from the Residence on November 9, 2002. *See id.* At trial, the defense attempted to introduce records of phone calls received by and made from the Residence between November 8, 2002, and November 12, 2002, to highlight the police's failure in investigating these calls. *See* T.3 at 1401–43. The trial court sustained the State's objection to the

admission of these phone records because the defense had committed a discovery violation.  *See id.* at 1442–43.

Further testimony revealed that hairs were found on the Victim's left hand and right forearm, and investigators had swabbed DNA from the rock found beside her, door handles, and other areas.  *See* T.2 at 780–82.  However, neither the Victim's vaginal and rectal swabs, nor her hairs and fibers, were tested.  *See id.* at 1290–92.  Separately, it was revealed that another man's prints were discovered on the Bible found in the field.  *See id.* at 1332; T.3 at 1333–34.

A jury rendered a guilty verdict against Petitioner on all counts as charged.  *See* App. 1, Ex. 3, Verdict, [ECF No. 11-1], at 9–10.  Petitioner was sentenced to three life sentences to run consecutively to each other.  *See* App. 1, Ex. 4, Sentence, [ECF No. 11-1], at 12–14.

## II.      Procedural History

Petitioner directly appealed from his conviction and sentence.  *See* App. 1, Ex. 5, Notice of Appeal, [ECF No. 11-1], at 16; App. 1, Ex. 6, Initial Brief, [ECF No. 11-1], at 19–52.  On November 19, 2015, the Fourth District Court of Appeal ("Fourth DCA") affirmed Petitioner's convictions and sentences per curiam and without a written opinion.  *See Thomas v. State*, 181 So. 3d 502 (Fla. 4th DCA 2015); *see also* App. 1, Ex. 8, Fourth DCA Order Affirming Judgment, [ECF No. 11-1], at 94.  Petitioner did not seek discretionary review with the United States Supreme Court.  *See* Resp. at 4.

On November 7, 2016, Petitioner filed a *pro se* motion for postconviction DNA testing pursuant to Rule 3.853 of the Florida Rules of Criminal Procedure ("Rule 3.853 Motion").  *See* App. 1, Ex. 10, Rule 3.853 Motion, [ECF No. 11-1], at 98–102.  The trial court denied Petitioner's Rule 3.853 Motion on May 16, 2017.  *See* App. 1, Ex. 11, Order Denying Rule 3.853 Motion, [ECF No. 11-1], at 104–06.

On December 12, 2017, Petitioner filed another *pro se* motion for postconviction relief under Rule 3.850 of the Florida Rules of Criminal Procedure ("Rule 3.850 Motion"). *See* App. 1, Ex. 12, Rule 3.850 Motion, [ECF No. 11-1], at 108–21. After extensive briefing, the trial court denied Petitioner's Rule 3.850 Motion. *See* App. 1, Ex. 13, State Response (Part 1) to Rule 3.850 Motion, [ECF No. 11-1], at 123–300; State Response (Part 2) to Rule 3.850 Motion, [ECF No. 11-2], at 1–166; App. 1, Ex. 14, Order Denying Rule 3.850 Motion, [ECF No. 11-2], at 168–76. Petitioner never appealed from the trial court's order denying his Rule 3.850 Motion. *See* Resp. at 5.

On June 13, 2025, Petitioner filed his instant Petition.[2] Respondent filed a Response, [ECF No. 10], Petitioner filed a Reply, [ECF No. 14], and Respondent filed a Supplemental Response, [ECF No. 16]. This Order follows.

## ANALYSIS

### I.     The Petition is Untimely Under 28 U.S.C. § 2244(d)(1)(A)

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") created a one-year statute of limitation for state prisoners to bring § 2254 petitions in federal court. *See* 28 U.S.C. § 2244(d)(1) ("A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court."). That limitation period "runs from the latest of" the following dates:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

---

[2] "Under the 'prison mailbox rule,' a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." *Williams v. McNeil*, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009) (citations omitted). "Absent evidence to the contrary, [the Court assumes] that a prisoner delivered a filing to prison authorities on the date that he signed it." *Jeffries v. United States*, 748 F.3d 1310, 1314 (11th Cir. 2014) (alteration added; citation omitted); *see* Pet. at 31.

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)–(D).  AEDPA's limitation period is tolled during "[t]he time . . . which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending."  *Id.* § 2244(d)(2).  To be "properly filed," as that term is used, a postconviction motion's "delivery and acceptance [must be] in compliance with the applicable laws and rules governing filings."  *Artuz v. Bennett*, 531 U.S. 4, 8 (2000).

A judgment becomes final under § 2244(d)(1)(A) when "[the Supreme Court] affirms a conviction on the merits on direct review or denies a petition for writ of certiorari, or when the time for filing a certiorari petition expires."  *Clay v. United States*, 537 U.S. 522, 527 (2003).  For state prisoners, this includes filing a petition for certiorari in the United States Supreme Court after seeking review in the state's highest court.  *See Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012) ("[T]he judgment becomes final at the 'expiration of the time for seeking such review'—when the time for pursuing direct review in this Court, or in state court, expires." (quoting 28 U.S.C. § 2244(d)(1)(A)).  Rule 13.1 of the Supreme Court Rules dictates that "a petition for a writ of certiorari to review a judgment in any case, civil or criminal, entered by a state court of last resort, is timely when it is filed with the Clerk of this Court within 90 days after entry of the judgment." Sup. Ct. R. 13.1 (emphasis removed).

The Court must therefore first determine when Petitioner's state court judgment became final.  As an initial matter, the Fourth DCA affirmed Petitioner's convictions and sentences on November 19, 2025.  Respondent posits that because the Fourth DCA issued a per curiam affirmance without a written opinion, Petitioner was not entitled to seek discretionary review in the Supreme Court of Florida.  *See* Resp. at 2.  The Court agrees.  The Supreme Court of Florida lacks jurisdiction to review an intermediate appellate court's per curiam decision without a written opinion.  *See Jackson v. State*, 926 So. 2d 1262, 1266 (Fla. 2006).  In these circumstances, the intermediate appellate court becomes the state court of last resort, and courts have thus granted habeas petitioners "an additional 90 days from the time the intermediate appellate court affirmed the judgment or denied rehearing, representing the time in which Petitioner could have filed a petition for writ of certiorari with the Supreme Court of the United States, but failed to do so." *Hernandez v. Jones*, No. 16-80566-Civ, 2017 WL 11485811, at *8 n.8 (S.D. Fla. Nov. 29, 2017) (listing cases), *report and recommendation adopted*, 2018 WL 10229913 (S.D. Fla. Jan. 30, 2018).

Accordingly, Petitioner's convictions and sentences became final on **February 17, 2016**— upon expiration of the 90-day period in which Petitioner could have sought discretionary review in the United States Supreme Court after the Fourth DCA issued its affirmance.  *See Smith v. Tucker*, No. 10-CV-175, 2011 WL 6955836, at *1 (N.D. Fla. Dec. 5, 2011) ("A conviction is not final until the expiration of a 90-day period for seeking certiorari review in the United States Supreme Court, or the conclusion of such review, whichever is later." (listing cases)), *report and recommendation adopted*, 2012 WL 28258 (N.D. Fla. Jan. 5, 2012).  Petitioner's one-year AEDPA limitation period began running the next day, February 18, 2016.  *See Roman v. Sec'y Dep't of Corr.*, No. 24-CV-1202, 2024 WL 5202799, at *1–2 (M.D. Fla. Dec. 23, 2024).

This means that Petitioner had until **February 18, 2017**—the expiration of the one-year limitation period—to collaterally attack his convictions, subject to tolling upon properly filed state postconviction motions.  But the Court agrees with Respondent that neither of Petitioner's state postconviction motions were properly filed.  <u>First</u>, Petitioner's Rule 3.853 Motion did not toll the limitation period.  This is because a motion brought under Florida Rule of Criminal Procedure 3.853 is an application for <u>discovery</u>, rather than an "application for post-conviction or other collateral review with respect to the pertinent judgment" for the purposes of AEDPA.  28 U.S.C. § 2244(d)(2); *see Brown v. Sec'y, Dep't of Corr.*, 530 F.3d 1335, 1337–38 (11th Cir. 2008) (holding that a Rule 3.853 motion does not toll AEDPA's limitation period because it "involves an application for discovery only, pursuant to which the court lacks authority to order relief from the movant's sentence or conviction based on the DNA test results").

<u>Second</u>, Petitioner's Rule 3.850 Motion had no tolling effect.  His one-year AEDPA limitation period had already passed on February 18, 2017, well before Petitioner filed his Rule 3.850 Motion on December 12, 2017.  It is well settled that "[a] state postconviction motion 'filed after expiration of the one-year AEDPA limitation period . . . [can]not toll the limitation period, as the limitation period ha[s] already expired.'"  *Mallet v. Inch*, No. 20-CV-294, 2020 WL 4227593, at *3 (N.D. Fla. June 22, 2020) (quoting *Delguidice v. Fla. Dep't of Corr.*, 351 F. App'x 425, 428 (11th Cir. 2009)), *report and recommendation adopted*, 2020 WL 4227532 (N.D. Fla. July 23, 2020).

Petitioner filed his instant Petition on June 13, 2025, over eight years after the expiration of Petitioner's limitation period.  Accordingly, the Petition is untimely.

## II.      Petitioner Does Not Satisfy an Exception to Timeliness

In addition to the standard limitation period under § 2244(d)(1)(A), a § 2254 habeas petition can be considered timely if "one of the three other limitation periods available in § 2244(d)(1)" apply, or if the habeas petitioner proves that he is entitled to rely on the "two extremely limited" equitable exceptions to § 2244(d)(1): equitable tolling or actual innocence. *Hill v. Dixon*, No. 23-21360, 2023 WL 3864061, at *5 (S.D. Fla. June 7, 2023). Petitioner does not avail himself of the alternative § 2244(d)(1) limitation periods nor has he shown that he is entitled to equitable tolling, so the Court will not discuss these exceptions further. *See id.*

However, Petitioner does contend that he is actually innocent of the underlying offenses. *See generally* Pet.; Reply. To demonstrate actual innocence, a petitioner must "support his allegations of constitutional error with new reliable evidence . . . that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). "[T]he petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Id.* at 327; *see also Woodruff v. Crockett*, No. 16-16845-H, 2017 WL 11680250, at *2 (11th Cir. Sept. 19, 2017) ("A claim of actual innocence is also required to contain newly discovered evidence that was not available at the time of trial."); *Preston v. Sec'y, Dep't of Corr.*, No. 08-CV-2085, 2012 WL 1549529, at *9 (M.D. Fla. May 1, 2012) ("A petitioner must show new facts unquestionably establishing his innocence." (citing *Schlup*, 513 U.S. at 315)). "[T]he threshold for proving . . . actual innocence is 'extraordinarily high,' and the demonstration of actual innocence must be 'truly persuasive.'" *Brooks v. Dixon*, No. 15-CV-264, 2022 WL 22856736, at *43 (N.D. Fla. Dec. 14, 2022) (quoting *Herrera v. Collins*, 506 U.S. 390, 417 (1993)).

Here, Petitioner argues that the jury in his case "never had the opportunity to be presented with the entirety of the evidence, and if they had, no reasonable juror could or would have found

him guilty of the offenses charged." Pet. at 12.  He posits that detectives failed to investigate some of the "tremendous amount of evidence" collected from the crime scene, *id.* at 14, including (but not limited to): fingerprints found on the Bible and window shutters, *see id.* at 15; a suspect who bragged about bashing someone's head with the "suspected murder weapon," *id.*; phone records reflecting calls made to and from the crime scene, *see id.* at 16; another local suspect who offered false alibis and had a prior arrest for sexual assault, *see id.*; and unknown deposits of semen purportedly present at the scene, *see id.* at 17.

Moreover, Petitioner faults investigators for not timely investigating between 2002 and 2010.  *See id.* at 19–24.  Petitioner further contends that the evidence admitted during trial was insufficient to support his conviction, explaining that there were (apparently) sperm samples "deposited at separate times . . . . on the night" of the Victim's murder, which occurred "at least 6-8 hours apart." *Id.* at 28.  Given the "multiple viable suspects" in his case, Petitioner therefore argues that his convictions rest exclusively on one insufficient DNA match. *Id.* at 29.  In its Supplemental Response, Respondent counters that none of the evidence upon which Petitioner relies can be considered "new" or as having been unavailable at trial.  *See* Supp'l Resp. at 22.

The Court agrees with Respondent and finds that Petitioner's actual-innocence arguments fall flat.  First, rather than offering any post-trial evidence, Petitioner relies largely on the legal insufficiency of the evidence presented, which cannot establish his actual innocence.  *See McKay v. United States*, 657 F.3d 1190, 1197 (11th Cir. 2011) ("First, and most importantly, for the purposes of the actual innocence exception, 'actual innocence means factual innocence, not mere legal insufficiency.'" (emphasis in original; quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998) (internal quotation marks omitted))); *Paulk v. United States*, No. 11-CV-80768, 2012 WL 13069818, at *14 (S.D. Fla. Mar. 5, 2012) ("An attack on the sufficiency of the evidence does not

demonstrate actual innocence." (citing *Rich v. Dep't of Corr.*, 317 F. App'x 881 (11th Cir. 2008))),

*report and recommendation adopted*, 2012 WL 13069808 (S.D. Fla. Mar. 26, 2012).

Second, Petitioner cannot wield the actual innocence exception to repackage evidence that

was available at trial, overlooked through lack of diligence, or withheld from the jury by choice or

failed argument.  *See Gray v. Daniels*, No. 14-CV-00271, 2015 WL 4641512, at *6 (N.D. Ala.

Aug. 4, 2015) ("This Court believes 'new' evidence must be evidence that petitioner did not

possess or know about at trial and could not have known about with the exercise of diligence.");

*Amrine v. Bowersox*, 128 F.3d 1222, 1230 (8th Cir. 1997) ("The evidence is new only if it was not

available at trial and could not have been discovered earlier through the exercise of diligence.");

*Goldblum v. Klem*, 510 F.3d 204, 226 n.14 (3rd Cir. 2007) ("Evidence is not 'new' if it was

available at trial, but a petitioner merely chose not to present it to the jury." (internal quotation

marks omitted)).

Indeed, all the evidence Petitioner complains was not admitted—such as fingerprints,

phone records, false statements, incriminating boasts, and unidentified evidence—was known at

trial and cannot be treated as unavailable.  *See, e.g.*, *Rivera v. Humphrey*, No. CV-113-161, 2017

WL 6035017, at *12 (S.D. Ga. Dec. 6, 2017) ("Not once does Petitioner claim that newly

discovered evidence demonstrates his innocence.   Petitioner's entire claim is based upon

previously existing evidence that trial counsel had in its possession but failed to use.").  For that

matter, Petitioner's unsupported allegations of prosecutorial misconduct and recklessness do not

alter the Court's view.  *See, e.g.*, Pet. at 14; *see also Lewis v. Howerton*, No. 07-CV-2803, 2012

WL 4514044, at *20 (N.D. Ga. Sept. 30, 2012) ("Lewis's allegations of prosecutorial misconduct

also cannot form the basis of an actual innocence claim." (citing *Cannon v. Johnson*, 23 F. App'x

218 (6th Cir. 2001))).

To summarize, Petitioner falls well below the extraordinary showing required to establish actual innocence.  Because Petitioner cannot satisfy any other exception to untimeliness, his Petition must be **DISMISSED** as time barred.

## EVIDENTIARY HEARING

No evidentiary hearing is warranted in this matter.  *See Winthrop-Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014) ("[A] district court need not hold a hearing if the allegations are patently frivolous, based upon unsupported generalizations, or affirmatively contradicted by the record. (cleaned up)).

## CERTIFICATE OF APPEALABILITY

After careful consideration of the record in this case, the Court declines to issue a certificate of appealability ("COA").   A habeas petitioner has no absolute entitlement to appeal a district court's final order denying his habeas petition.  Rather, to pursue an appeal, a petitioner must obtain a COA.  *See* 28 U.S.C. § 2253(c)(1); *Harbison v. Bell*, 556 U.S. 180, 183 (2009).

Issuance of a COA is appropriate only if a litigant makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To do so, litigants must show that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.  *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  If a district court "denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claims" the movant must also show that "jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Id.*

Here, reasonable jurists would not find the Court's procedural ruling that the Petition is untimely to be debatable.  Accordingly, a COA is denied and shall not issue.

## <u>CONCLUSION</u>

Having carefully reviewed the record and governing law, it is

**ORDERED AND ADJUDGED** that *pro se* Petitioner Larry Thomas, Jr.'s Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, [ECF No. 1], is **DISMISSED** as untimely. All pending motions are **DENIED as moot**. Any demands for an evidentiary hearing are **DENIED**, and a certificate of appealability shall **NOT ISSUE**. The Clerk is directed to **CLOSE** this case.

**DONE AND ORDERED** in Miami, Florida, this 30th day of September, 2025.

_____
**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**

cc:    Larry Thomas, Jr
      195787
      Everglades Correctional Institution
      Inmate Mail/Parcels
      1599 SW 187th Avenue
      Miami, FL 33194
      PRO SE